IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

JUAN MANUEL HERNANDEZ-MARTINEZ, on          )
behalf of himself and themselves and        )
all other similarly situated persons,       )
                                            )        Second Amended
                                            )        Complaint
                    Plaintiffs,             )
                                            )
v.                                          )
                                            )        CLASS ACTION
                                            )
Speight Seed Farms, Inc., John Milton       )
Beamon, and Emma Ortega,                    )
                                            )
                    Defendants.             )
_____ )

I.   PRELIMINARY STATEMENT

    1.    Plaintiff Juan Manuel Hernandez-Martinez ("Plaintiff")

and the workers Plaintiff seeks to represent were H-2A workers who

were recruited by defendants' authorized agents in Mexico in all

or some of the years 2010 through 2013 to work on defendants'

tobacco farm under the H-2A guestworker program in and around Pitt

County, North Carolina.  Plaintiff files this action as a

collective action under 29 U.S.C. §216(b) of the Fair Labor

Standards Act ("FLSA"), as a class action under the North Carolina

Wage and Hour Act ("NCWHA"), N.C.Gen.Stat. §§ 95-25.1 et seq., and

as a class action under the common law of contracts.

    2.    Defendants violated the FLSA, the NCWHA and the AWPA by

failing to pay the Plaintiff, the class the Plaintiff seeks to

represent, and the members of the collective action the Plaintiff

seeks to represent at least the required minimum and promised

hourly wage when due on the promised regular payday for every

compensable hour of labor performed in the first workweek that the Defendants employed the Plaintiff and the workers that he seeks to represent by failing to timely reimburse Plaintiff's pre-employment expenses that were required by law, and by withholding hundreds of dollars of weekly wages that were due as part of an alleged wage savings plan.

3. Defendants also breached their employment contracts with Plaintiff Hernandez and the class that Plaintiff seeks to represent by failing to pay Plaintiff and that class at least the required minimum hourly wage under the adverse effect wage rate ("AEWR") promulgated by the U.S. Department of Labor ("DOL") pursuant to 20 C.F.R. §§ 655.104(l), 655.105(g), and 655.108(a)(2009) and 20 C.F.R. §§ 655.120, 655.122(l), and 655.122(p)(1)-(2)(2010) by failing to reimburse the pre-employment expenses of those Plaintiffs and that class as required by law, and by withholding hundreds of dollars of weekly wages that were due under the work contract as part of an alleged wage savings plan in violation of that work contract and 20 C.F.R. §§ 655.122(m) and 655.122(p)(1).

4. Plaintiff, the classes the Plaintiff seeks to represent, and the members of the collective action that the Plaintiff requests leave to represent seek their unpaid wages, statutory damages, and liquidated damages under 29 U.S.C. § 216(b), 29 U.S.C. § 1854(c)(1), and N.C.Gen.Stat. §§ 95-25.22(a) and (a1). They also seek actual, incidental, consequential, and

compensatory damages, pre- and post-judgment interest, and declaratory relief as alleged.

## II. JURISDICTION

5. Jurisdiction is conferred upon this Court over all defendants named in this action pursuant to 28 U.S.C. §§1331 and 1337, 29 U.S.C. § 216(b) and 1854(a), and 28 U.S.C. §1367(a).

6. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## III. VENUE

7. Venue over this action lies in this Court pursuant to 28 U.S.C. §§1391(b)(2), and 29 U.S.C. §216(b). In the time period from January 1, 2009 to the date on which this action was filed, the defendants jointly and/or severally employed the Plaintiff and a substantial number of the member of the classes of persons and collective action that the Plaintiff seeks to represent in or around Pitt County, North Carolina or one of the other counties specified in 28 U.S.C. § 113(a) for each of the pay periods that the Plaintiff and the members of the classes and collective action that the Plaintiff seeks to represent were employed to perform any work at any time in those same workweeks. Therefore, a substantial part of the events or omissions giving rise to the claims of the Plaintiff and the classes and collective action that the Plaintiff seeks to represent occurred in the judicial district of the U.S. District Court for the Eastern District of North Carolina.

8.     Venue over this action also lies in this Court pursuant to 28 U.S.C. §§1391(b)(1), and 29 U.S.C. §216(b).  On the date on which this action was filed and in the time period from January 1, 2009 immediately preceding that same date, the principal place of business and residence of the defendants were and are located in one or more of the counties listed in 28 U.S.C. § 113(a).

IV.   <u>NAMED PLAINTIFF</u>

9.     For many of the workweeks that occurred in the time period from January 1, 2012 to December 31, 2012, the named Plaintiff was jointly and severally employed by defendants John Milton Beamon, Speight Seed Farms, Inc., and Emma Ortega (hereinafter referred to collectively as the "Speight defendants") in and around Pitt County, North Carolina and/or one or more other counties in North Carolina listed in 28 U.S.C. § 113(a) as follows:

(a)   Plaintiff    Juan    Manuel    Hernandez-Martinez ("Hernandez") was jointly and severally employed with an H-2A visa by the Speight defendants in all phases of the production of tobacco in and around Pitt County, North Carolina for the entire "period of employment" in the H-2A job order(s) filed by defendants Speight Seed Farms, Inc. and John Milton Beamon in 2012.

10.    In order to obtain the employment that is described in ¶9(a) above and in ¶¶55 and 57 below, the Plaintiff, the class of H-2A workers that Plaintiff Hernandez seeks to represent in connection with the defendants' failure to timely reimburse for

4

all pre-employment expenses, and the members of the collective action that Plaintiff Hernandez seeks to represent were jointly and severally recruited in Mexico and transported directly from Mexico to North Carolina by or at the direction of or by arrangements made by one or more of the Speight defendants or one or more of their authorized agents to begin that same employment.

11. At all times relevant to this complaint, Plaintiff Hernandez and the class of H-2A workers that Plaintiff seeks to represent, and the members of the collective action that Plaintiff seeks to represent were H-2A agricultural guestworkers admitted into the United States to work for defendants pursuant to the authority of the H-2A program codified at 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A), 1184(c), and 1188(a)(1).

V.    <u>DEFENDANTS</u>

12. At all times on and after January 1, 2005 up to and including July 21, 2011, defendant Speight Seed Farms, Inc. ("Speight") was and is a corporation in good standing under the laws of the State of North Carolina that was duly formed in October 1971 under and in accordance with those same laws. Speight Seed Farms, Inc. may be served with process through service on the President of Speight Seed Farms, Inc., John Milton Beamon, 3719 Speight Seed Farm Road, Winterville, North Carolina 28590.

13. At all times on and after January 1, 2009 to the present date, defendant John Milton Beamon ("Beamon") was and continues to be the President or Vice-President and owner of

defendant Speight Seed Farms, Inc., and did and does business as Speight Seeds Farms, Inc., a North Carolina corporation that has been administratively dissolved by the North Carolina Secretary of State since July 21, 2011. During that period of time, the principal place of business of was and is located at 3719 Speight Seed Farm Road, Winterville, North Carolina 28590, tel: (252)756-0718.

14. Upon information and belief, at all times relevant to this action, defendant John Milton Beamon (hereinafter "Beamon") was and is the owner of the majority interest of the business entity defendant Speight. Upon information and belief, defendant Beamon resides at the following address: (a) John Milton Beamon – 3929 Sterling Pointe Drive, Winterville, NC 28590, tel: (252)439-8521.

15. At all times on or after January 1, 2007, defendant Emma Ortega was and is the chief field supervisor or field manager for all of the H-2A workers that one or both of the defendants employed during that same time period. Defendant Ortega acted and continues to act as the authorized agent of one or both defendants Beamon and Speight with respect to each action(s) that is specifically attributed to her in this complaint.

16. At all times relevant to this action, defendant John Milton Beamon, defendant Speight Seed Farms, Inc. and defendant Emma Ortega had the power to hire and fire Plaintiff, the classes of H-2A workers and non-H-2A workers that Plaintiff seeks to

6

represent, and the members of the collective action that Plaintiff Hernandez seeks to represent.

17. At all times relevant to this action, defendant John Milton Beamon, defendant Speight Seed Farms, Inc. and defendant Emma Ortega were day to day managers with operational control over the employment operations of defendant John Milton Beamon and defendant Speight Seed Farms, Inc.

18. At all times relevant to this action, defendant John Milton Beamon, defendant Speight Seed Farms, Inc. and defendant Emma Ortega were the employers of the Plaintiff, the classes of H-2A workers and non-H-2A workers that the Plaintiff seeks to represent, and the members of the collective action that Plaintiff Hernandez seeks to represent as defined by 29 U.S.C. § 203(d) and N.C.Gen.Stat. § 95-25.2.

19. At all times relevant to this action, defendant John Milton Beamon, defendant Speight Seed Farms, Inc. and defendant Emma Ortega were the employers and joint employers of the Plaintiff, the members of the collective action, and classes of H-2A workers that Plaintiff seeks to represent as defined by the terms of federal regulations set forth in 655.102-103(2008), 20 C.F.R. §§ 655.100(c)(2009), and 20 C.F.R. §§ 655.103(b)(2010).

20. At all times relevant to this action in the time period from January 1, 2007 through the present date, both the individual and corporate defendants were and are engaged in the production of tobacco and other agricultural products in and around Pitt County, North Carolina for sale in interstate commerce.

21. For each calendar year in the time period starting with January 1, 2007 and continuing through and including all of 2013 to date, the employment of the Plaintiff and/or the members of the classes of H-2A and/or non H-2A workers that the Plaintiff seeks to represent, and the members of the collective action that Plaintiff Hernandez seeks to represent were and are part of an enterprise operated by defendant Beamon and/or defendant Speight. More than one of these same persons that the Speight defendants so employed in that same enterprise described handled, sold, or otherwise worked on goods or materials that had been moved in or produced in interstate commerce. For each year in that same time period, that enterprise had and has an annual gross volume of sales or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that were separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A)(ii).

VI. <u>FLSA FIRST COLLECTIVE ACTION ALLEGATIONS</u>

22. Pursuant to the collective action procedure specified at 29 U.S.C. §216(b) and the Fourth Claim for Relief, named Plaintiff Hernandez files this collective action for each similarly situated person employed by defendants Beamon, Speight, and Ortega at any time in the time period starting with the first date in the three (3) year time period immediately preceding the date on which such person files a Consent to Sue in this action pursuant to 29 U.S.C. §216(b), and ending with the date final judgment is entered in this action.

23.   This FLSA action for the Fourth Claim for Relief is on behalf of those members of the FLSA collective action for each workweek in that same time period Plaintiff Hernandez and the members of the FLSA collective action performed or will perform any work in North Carolina for defendants Beamon, Speight, and Ortega when that worker suffered an illegal wage deduction pursuant to the Speight defendants' illegal wage savings plan in violation of the requirements of 29 U.S.C. §§ 206(a)(1) and 216(b), N.C.Gen.Stat. §§ 95-25.6 and 95-25.8, 13 NCAC Tit.12 §§ .0305(b)-(c) and .0305(g), and/or 20 C.F.R. §§ 655.104(m) and 655.104(1)(2009), 20 C.F.R. §§ 655.122(m) and 655.122(p)(1)(2010).

24.   The Speight defendants jointly or severally employed the named Plaintiff and/or jointly severally employed or will jointly and severally employ an unspecified number of other workers to perform manual labor in the form of agricultural labor in the production and harvest of tobacco and/or other agricultural products for one or more of the Speight defendants.

25.   This collective action by similarly situated persons under 29 U.S.C. §216(b) is based upon the Speight defendants' willful use of an illegal wage deduction involuntary savings plan they imposed upon the Plaintiff and all other persons the Speight defendants employed to perform the same type of work as the Plaintiff performed in violation of 29 U.S.C. §§ 206(a)(1) and 216(b), N.C.Gen.Stat. §§ 95-25.6 and 95-25.8, 13 NCAC Tit.12 §§ .0305(b)-(c) and .0305(g), and/or 20 C.F.R. §§ 655.104(m) and 655.104(1)(2009), 20 C.F.R. §§ 655.122(m) and 655.122(p)(1)(2010).

26. As a result of the Speight defendants' willful use of this illegal wage deduction involuntary savings plan, the wages that the Plaintiff and the members of this second collective action received or will receive free and clear from the Speight defendants on or before each regularly scheduled payday for each workweek that the named Plaintiff and the members of this second collective action performed or will perform work in North Carolina for the Speight defendants were or will be less than the minimum wage required by 29 U.S.C. §206(a) on a weekly basis for each hour or part of an hour of actual work that the named Plaintiff and each such similarly situated person was employed or will be employed by the Speight defendants in each of those same workweeks that each such person was or will be so employed.

## VII. RULE 23(b)(3) CLASS #1 (NCWHA H-2A reimbursement claim)

27. Both claims set forth in the First Claim for Relief and Second Claim for Relief are brought by Plaintiff Hernandez on behalf of himself and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

28. In the Second Claim for Relief based in contract, named Plaintiff Hernandez seeks to represent a class consisting of all H-2A workers who traveled directly from Mexico to North Carolina to perform temporary or seasonal work in agriculture as an employee of the Speight defendants at any time in the three (3) year time period immediately preceding the date on which this action was filed and continuing thereafter until the date on

which final judgment is filed in this action, and/or who traveled directly from North Carolina to Mexico to return to their place of residence in Mexico as part of their compliance with the exit date specified in their H-2A visa after they had completed 50% of the work period of their H-2A job contract with the Speight defendants. In the First Claim for Relief based on the NCWHA, the named Plaintiff seeks to represent the same class of workers but limit that class to only the two (2) year time period immediately preceding the date on which this action is filed and continuing through the date final judgment is entered in this action.

29. Each class alleged in ¶28 above is so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in each class is known only to the Speight defendants. However, each class is believed to include over fifty (50) individuals. Each class is comprised of indigent H-2A workers who maintain their permanent homes in or around central or northern Mexico. The class members of each class are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the class members of each class make the maintenance of separate actions by the class members of each class infeasible.

30. There are questions of law and fact common to each class alleged in ¶28 above. These common legal and factual questions are, among others:

(a) Did the Speight defendants violate the minimum wage or wage payment provisions of N.C.Gen.Stat. §§ 95-25.3 and 95-25.6 of the North Carolina Wage and Hour Act ("NCWHA") by requiring Plaintiff Hernandez and each member of the class defined in ¶28 above to make the payments described in ¶¶78-82, inclusive, below as a condition of employment?

(b) Were each of the payments described in ¶30(a) above "primarily for the benefit of" one or more of the defendants within the meaning of 29 C.F.R. §§ 531.3(d)(1), 532.32(a), and 532.32(c), and 13 NCAC Tit.12 § .0301(d) of the NCWHA?

(c) Pursuant to N.C.Gen.Stat. § 95-25.6, did the Speight defendants pay all wages due, free and clear, to the named Plaintiff and the each member of the classes defined in ¶28 above on the regular weekly payday when those wages were due at the hourly wage rate they agreed to pay each of those workers for all hours worked?

31. The claim of Plaintiff Hernandez is typical of the claims of the members of each class defined in ¶28 above, and those typical, common claims predominate over any questions affecting only individual class members. Plaintiff Hernandez has the same interests as to other members of each class defined in ¶28 above and will vigorously prosecute these interests on behalf of each class defined in ¶28 above.

32. Plaintiff Hernandez will fairly and adequately represent the interests of each class defined in ¶28 above.

33. The undersigned counsel Robert J. Willis of the Law Office of Robert J. Willis, P.A. for Plaintiff Hernandez is an experienced litigator who has been named counsel for several class actions. Counsel for Plaintiff Hernandez is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of each class defined in ¶28 above under Rule 23(b)(3).

34. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the two (2) classes defined in ¶28 above, substantially diminish the interest of members of each of the two classes defined in ¶28 above in individually controlling the prosecution of separate actions;

(b) Many members of each of the two (2) classes defined in ¶28 are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) There has been no litigation already commenced against any of the defendants by the members of either of the two (2) classes defined in ¶28 above to determine the questions presented;

(d) It is desirable that the claims be heard in this forum because the Speight defendants all reside in this district and the cause of action arose in this district;

(e)   A class action can be managed without undue difficulty because the Speight defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the class.

VIII. <u>RULE 23(b)(3) CLASS #2 (NCWHA wage deduction claim)</u>

35.   The Third Claim for Relief is brought under the NCWHA by all Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

36.   In the Third Claim for Relief based on the NCWHA, named Plaintiff seeks to represent a class consisting of all employees of one or more of the Speight defendants who performed temporary or seasonal work in agriculture as a employee of one or more of the Speight defendants at any time in the two (2) year time period immediately preceding the date on which this action was filed and continuing thereafter until the date on which final judgment is filed in this action, and from whom one or more of the Speight defendants withheld weekly wages that were due during that same time period as part of an alleged wage savings plan. This class also contains a subclass of named Plaintiff Hernandez and all persons employed by one or more of those same Speight defendants under the H-2A program at any time during that same time period.

37.   The class and subclass alleged in ¶36 above are so numerous and so geographically dispersed as to make joinder impractical. The precise number of individuals in this class and

subclass are known only to the Speight defendants. However, the class and subclass are both believed to include over fifty (50) individuals. This class and subclass are comprised of low wage and/or indigent workers who maintain their permanent homes in or around central or northern Mexico or other isolated locations in eastern North Carolina. The overwhelming majority of the members of this class and subclass are not fluent in the English language and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence and/or low income of the members of this class and subclass make the maintenance of separate actions by each class member of this class and subclass infeasible.

38. There are questions of law and fact common to each class and subclass alleged in ¶36 above. These common legal and factual questions are, among others:

(a) Did the Speight defendants violate any of the wage payment provisions of N.C.Gen.Stat. §§ 95-25.6 and 95-25.8(a) and 13 N.C.A.C. Tit. 12 §§ .0305(a)-(c) of the North Carolina Wage and Hour Act ("NCWHA") applicable to all of the named Plaintiff and the class and subclass defined in ¶36 above by making involuntary and/or voluntary wage deductions from the weekly wages that were due each of the named Plaintiff and the members of the class and subclass defined in ¶36 above as part of an alleged wage savings plan?

(b) Were the involuntary and/or voluntary wage deductions that the Speight defendants made from the weekly wages that were

due the named Plaintiff Hernandez and the members of the subclass defined in ¶36 above made in violation of N.C.Gen.Stat. § 95-25.6 and 95-25.8(a), 13 N.C.A.C. Tit. 12 §§ .0305(a)-(c) and .0305(g), and/or 20 C.F.R. § 655.122(m), and 20 C.F.R. § 655.122(p)(1)(2010)?

(c) Did any of the weekly wage deductions that the Speight defendants made from the weekly wages paid free and clear to the named Plaintiff and each member of the class and subclass defined in ¶36 above reduce the net weekly wage paid to those same workers below the minimum rate required by 29 U.S.C. § 206(a) or the minimum rate required by 20 C.F.R. § 655.120 for the hours worked in the relevant workweek by each such worker?

39. The claim in the Third Claim for Relief of the named Plaintiff is typical of the claims of the members of the class defined in ¶36 above, and those typical, common claims predominate over any questions affecting only individual class members. The same is true with respect to the Third Claim for Relief by named Plaintiff Hernandez for the claims of the members of the subclass defined in ¶36 above. The named Plaintiff has the same interests as to other members of the class defined in ¶36 above and will vigorously prosecute these interests on behalf of the class defined in ¶36 above. The same is and will be true with respect to the interests and vigorous prosecution by named plaintiff Hernandez as to the interests of the subclass defined in ¶36 above.

40. The named plaintiff will fairly and adequately represent the interests of the class and subclass defined in ¶36 above.

41. The undersigned counsel Robert J. Willis of the Law Office of Robert J. Willis, P.A. for all Plaintiffs is an experienced litigator who has been named counsel for several class actions. Plaintiff's counsel is prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the class and subclass defined in ¶36 above under Rule 23(b)(3).

42. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the class and subclass defined in ¶36 above, substantially diminish the interest of members of the class and subclass defined in ¶36 above in individually controlling the prosecution of separate actions;

(b) Many members of each of the class and subclass defined in ¶36 are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) There has been no litigation already commenced against any of the Speight defendants by the members of either the class or subclass defined in ¶36 above to determine the questions presented;

(d)  It is desirable that the claims be heard in this forum because the Speight defendants all reside in this district and the cause of action arose in this district;

(e)  A class action can be managed without undue difficulty because the Speight defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the class and subclass defined in ¶36 above.

IX.  <u>STATUTORY AND REGULATORY STRUCTURE - H-2A PROGRAM</u>

43.  The H-2A program was created by 8 U.S.C. §§ 1101(a)(15)(H)(ii)(A), 1184(c), and 1188(a)(1), and was implemented pursuant to regulations found at 20 C.F.R. §§ 655.0-655.119 (2009), and 20 C.F.R. §§ 655.100-655.185 (2010). The H-2A program authorizes the lawful admission of temporary, non-immigrant workers to perform agricultural labor or services of a temporary nature.

44.  Because of the lack of available documented workers in the areas of the operations of the Speight defendants, the Speight defendants applied for temporary certification by the U.S. Department of Labor ("DOL") to employ temporary foreign workers through the H-2A program, including applications submitted seeking workers for employment in each year from 2005 through 2012.

45.  Depending upon the date of application, each such application must include a job offer that complies with the requirements of 20 C.F.R. §§ 655.102 and 653.501(2008), 20 C.F.R. §§ 655.104 (2009) and 653.501 (2009), and 20 C.F.R. §§ 655.122 and

653.501 (2010), and must include an agreement to abide by the assurances required by 20 C.F.R. § 655.103(2008), 20 C.F.R. § 655.105 (2009), and 20 C.F.R. § 655.135 (2010). 20 C.F.R. § 655.101(b)(2008), 20 C.F.R. § 655.105 (2009), and 20 C.F.R. § 655.131 (2010). The job offer, commonly referred to as a "clearance order" or "job order", is used to recruit both United States and foreign nationals for H-2A visas.

46. In the years from 2007 to and including 2013 for those years in which the named Plaintiff was employed as H-2A workers by one or more of the Speight defendants, the terms and conditions in the job order became the employment contract between one or more of the Speight defendants, the named Plaintiff, and the members of the classes, subclass, and two collective actions.

47. As a condition of receiving temporary labor certification for the importation of H-2A workers, agricultural employers like one or more of the Speight defendants are required to pay the highest of the "adverse effect wage rate", or the federal or state minimum wage. 20 C.F.R. § 655.202(b)(9)(i)(2008), 20 C.F.R. §§ 655.104(l)(1), 655.105(g), and 655.108(a) (2009), and 20 C.F.R. §§ 655.120 and 655.122(l)(2010).

48. At all times during the time period from January 1, 2005 to the present, agricultural employers like one or more of the Speight defendants who employed H-2A workers were and are required to "keep accurate and adequate records" of workers' earnings. 20 C.F.R. § 655.102(b)(7)(2008), 20 C.F.R. § 655.104(j)(1)(2009), and 20 C.F.R. § 655.122(j)(1).

49. In each of their H-2A contracts in at least calendar years 2005 through and including 2013, the Speight defendants promised that each worker would be paid free and clear at least the minimum wage rate required by 29 U.S.C. § 206(a), the prevailing rate for the crop activity, or the AEWR, whichever was higher. Exhibits A-I attached at sections entitled "Wage Rates, Special Pay Information and Deductions" or "Wage Rates/Pay Information".

50. In each of their H-2A contracts contained in the H-2A labor certification applications that they made in at least calendar years 2005 through and including 2013, the Speight defendants promised that each worker would be paid all wages due on a weekly basis. Exhibits A-I attached at sections entitled "Wage Rates, Special Pay Information and Deductions" or "Wage Rates/Pay Information".

51. In each of their H-2A contracts contained in the H-2A labor certification applications that they made in at least calendar years 2005 through and including 2013, the Speight defendants also promised that the weekly wages to be paid each worker would not be subject to any wage deduction other than as required by law or for advances and/or loans to workers by pre-authorized payroll deductions, and that any wage deductions that were made would be made in accordance with FLSA regulations. Exhibits A-I attached at sections entitled "Wage Rates, Special Pay Information and Deductions" or "Wage Rates/Pay Information".

52.   In their H-2A contract for calendar years 2005-06, the Speight defendants promised to reimburse H-2A workers who complete 50 percent of the work contract period and who are not reasonably able to return the same day to their place of residence for the reasonable cost of transportation and subsistence from the place of recruitment to the place of employment. Exhibits A, B, and C attached at section entitled "Transportation".

53.   In each of their H-2A contracts for calendar years after 2006 through 2013 to date, those same Speight defendants promised to reimburse H-2A workers for the reasonable cost of inbound transportation on or before the first payday to the extent necessary to insure that the wages of those same workers' in the first workweek of work performed for the Speight defendants in North Carolina did not fall below the minimum hourly wage rate required by 29 U.S.C. § 206(a).  Exhibits D through I attached at section entitled "Transportation".

54.   In each of their H-2A contracts from at least calendar years 2005 through the present, the Speight defendants promised to abide by the assurance regulations at 20 C.F.R. § 655.103 (2008), 20 C.F.R. § 655.105 (2009), or 20 C.F.R. § 655.135(2010), and at 20 C.F.R. § 653.501 (2008), which govern the labor certification process for H-2A "employers" and "joint employers" as those terms are defined by 20 C.F.R. § 655.100 (2008), 20 C.F.R. § 655.100(c)(2009), and/or 20 C.F.R. 655.103(b)(2010). Exhibits A-H attached at section entitled "Other Conditions of Employment".

X.    STATEMENT OF FACTS

55. For each tobacco planting and harvest season that occurred in calendar years 2010 through and including the date the Court enters final judgment in this action, one or more of the Speight defendants imported and employed the classes of H-2A workers that Plaintiff Hernandez seek to represent, and the members of the first collective action that named Plaintiff Hernandez seeks to represent under job order contracts to perform that same planting and harvest agricultural work for one or more of the Speight defendants. During each of those same seasons in that same time period, the Speight defendants also hired and employed and will hire and employ substantial number of persons who did not have an H-2A visa to perform the same type of work.

56. A true and correct copy of the job order contracts referred to in ¶55 above for those same harvest or planting seasons in calendar years 2005-2013, inclusive, are attached marked as Exhibits A through I.

57. For the time periods alleged in ¶9(a) above, plaintiff Juan Manuel Hernandez-Martinez ("Plaintiff") was employed under the terms of the job order contracts that existed for each of the respective years described in ¶9(a) above.

58. In each calendar year from 2005 through and including 2013, each employment contract of defendants Beamon and Speight under the H-2A program contained an "Employer's Certification" that stated: "this job order describes the actual terms and conditions of the employment being offered by me and contains all

the material terms and conditions of the job." Exhibits A-I attached.

59. In calendar year 2005, the "Employer's Certification" for both contracts for that agricultural season were signed by Craig Stan Eury, Jr. in his capacity as the "Executive Director" of The North Carolina Grower's Association, Inc. ("NCGA"), the Association to which the Speight defendants belonged for much if not all of the 2005 agricultural season and several seasons before that in North Carolina. Exhibits A-B attached in section marked "Declarations".

60. In each calendar year from 2006 through and including 2013, the "Employer's Certification" in each employment contract of those same defendants was signed by defendant John Milton Beamon as "Owner VP", "President", or as the President and owner of Speight. Exhibits C-I attached in section marked "Declarations".

61. In each calendar year from 2006 through and including 2013, each employment contract of the Speight defendants contained a "Declaration of Employer" swearing "under penalty of perjury the foregoing is true and correct." Exhibits C-I attached.

62. In each calendar year from 2006 through and including 2013, the "Declaration of Employer" in each employment contract of the defendants was signed by defendant John Milton Beamon. Exhibits C-I attached.

63. In the 2006 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $8.51 per hour.

64. In the 2007 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $9.02 per hour.

65. In the 2008 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $8.85 per hour.

66. In the 2009 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $7.25 per hour.

67. In the 2010 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $7.50 per hour.

68. In the 2011 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $9.30 per hour.

69. In the 2012 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $9.70 per hour.

70. In the 2013 planting and/or harvest season employment contract of one or more of the Speight defendants promised to pay free and clear the applicable AEWR which was $9.68 per hour.

71. Upon information and belief, for each harvesting and planting season that occurred in calendar years 2006 through and

including 2013, the individual and corporate Speight defendants contracted with MAS Labor H-2A, LLC as its agent in the United States of America to:

    (a)    craft/modify all aspects of the employment contracts for H-2A workers with those same defendants,

    (b)    to conduct all interaction with the various branches of government involved in the certification of an application for alien employment under the H-2A program visa application either directly or indirectly through the use of the private employment service agency in Mexico to be designated by MAS Labor H-2A, LLC,

    (c)    track the status of the H-2A workers that those same defendants preferred to employ with the assistance of the labor contractor or recruiter in Mexico that made available to those same defendants,

    (d)    make adjustments to the status of the H-2A workers that those same defendants preferred to employ based upon the information that Mas Labor H-2A, LLC received from the labor contractor or recruiter in Mexico that Mas Labor H-2A, LLC made available,

    (e)    provide all necessary recruitment services, including but not limited to, visa processing assistance for the H-2A workers that those same defendants preferred to employ after those workers had been identified by those same defendants for Mas Labor H-2A, LLC through the use of the labor contractor or recruiter in Mexico that Mas

Labor H-2A, LLC made available to those same defendants,

(f) provide all necessary recruitment for the timely replacement of H-2A workers that those same defendants preferred to employ if it was determined that any of those worker(s) were not available for employment with one or more of those same defendants in any particular season through the use of the labor contractor or recruiter in Mexico that Mas Labor H-2A, LLC made available to those same defendants,

(g) provide consulting services as to relevant developments in the laws and court decisions affecting those same defendants' employment of H-2A workers.

72. At all times that one or more of the individual Speight defendants and/or defendant Speight used the services of Mas Labor H-2A, LLC, Inc., Elizabeth D. Whitley owned and operated Mas Labor H-2A, LLC, Inc.

73. For each harvest and planting season that occurred in calendar years 2006 through and including 2013 one or more of the Speight defendants authorized Mas Labor H-2A, LLC, and/or Elizabeth Whitley, either directly or indirectly through its designated representatives or agents in Mexico, to maintain and carry out all contacts with any government agency, office, and/or Consulate of the United States located in Mexico necessary to obtain the number of H-2A workers that the Speight defendants needed for each of those same seasons.

74. At all times relevant to this action, Mas Labor H-2A, LLC, ("Mas") is and has been a closely held, for-profit corporation organized under the laws of the State of Virginia to provide labor consulting, recruiting, hiring, referral, transfer, and transportation services for any agricultural employers who desire to employ one or more H-2A workers under the H-2A program.

75. At all times relevant to this complaint, Elizabeth Whitley has been and continues to be the President of Mas.

76. In calendar years 2006 through 2013, the Speight defendants did not pay any person(s) or entity for any of the services that any person(s) or entity provided in Mexico to Plaintiff Hernandez and all of the other prospective H-2A employees of one or more of the Speight defendants to assist those prospective H-2A employees of the Speight defendants to obtain an H-2A visa.

77. For each season in 2010, 2011, 2012, 2013, and any season after 2013 until the date that the Court enters judgment in this action that named Plaintiff Hernandez, the members of the classes defined in ¶28 above that Plaintiff Hernandez seek to represent traveled directly from Mexico to North Carolina, by way of Monterrey, Mexico, to work for one or more of the Speight defendants under the H-2A program, the named Plaintiff and those other same H-2A workers paid for transportation from the place where they were recruited to Monterrey, Mexico, from Monterrey, Mexico to the border of the United States and Mexico at Laredo,

Texas, and from Laredo, Texas to their place of employment by the Speight defendants in North Carolina.

78. For each season described in ¶77 above before 2013, named Plaintiff Hernandez and those same other H-2A workers described in ¶77 above paid for transportation from the place where they were recruited to the place of residence for the visa processing agent they were required to use as a condition of employment by the Speight defendants in 2010 and 2011 to deliver their passports to that same visa processing agent to obtain their H-2A visa to work for the Speight defendants.

79. For each season described in ¶77 above, named Plaintiff Hernandez and those same other H-2A workers described in ¶77 above returned directly from North Carolina to their home village in Mexico, by way of Laredo, Texas and Monterrey, Mexico, by the exit date specified in their H-2A visas after they had completed working 50% of the contract period specified in their H-2A job contract for each such season in order to comply with the expiration date of their H-2A visas that allowed them to work for the Speight defendants. For each return trip so described, the named Plaintiff and the other workers described in this paragraph paid for the cost of transportation out of their pockets.

80. For each season that Plaintiff Hernandez and each H-2A worker described in ¶77 of the complaint reported to Monterrey, Mexico to complete their H-2A visa processing at the U.S. Consulate on the date indicated by defendant Ortega and/or one or more the authorized and express agent(s) of the Speight

defendants, named Plaintiff Hernandez and those same other H-2A workers were required to obtain and pay for lodging in Monterrey in the night before the date of scheduled by one or more of the Speight defendants, MAS, and/or their agents in Mexico for the H-2A visa interview and processing of those same workers by the U.S. Consulate in Monterrey.

81. For reasons that were not the fault of Plaintiff Hernandez and each H-2A worker described in ¶77 above of the complaint, the U.S. Consulate delayed the interview and/or processing of the H-2A visas for the named Plaintiff and each H-2A worker described in ¶¶77 and 80 above at least one day so that the H-2A visa interview and/or processing by the U.S. Consulate did not occur on the date scheduled by the Speight defendants, MAS, and/or their agents in Mexico. As a result, the named Plaintiff and those same other H-2A workers described in ¶¶77 and 80 above incurred expenses for lodging during the period that they were required to wait more than one night in Monterrey for their H-2A visa applications to be processed.

82. For each season that Plaintiff Hernandez and each H-2A worker described in ¶77 of the complaint traveled directly from Mexico to North Carolina to work for one or more of the Speight defendants under the H-2A program, the named Plaintiff and those same other H-2A workers paid $6.00 for the issuance of the Customs and Border Patrol Form I-94 required to enter the United States.

83. The expenditures described in ¶¶78-82 above of this complaint by named Plaintiff Hernandez and the other H-2A workers

described in ¶77 above that named Plaintiff Hernandez seeks to represent were primarily for the benefit of the Speight defendants within the meaning of 29 C.F.R. §§ 531.3(d)(1), 531.32(a), 531.32(c), and 778.217, and 13 N.C.A.C. Title 12 § .0301(d).

84. The inbound expenditures set out in ¶¶78 and 80-82, inclusive, above were made before the receipt of the first workweek's paycheck from one or more of the Speight defendants by named Plaintiff Hernandez, the members of the class of H-2A workers defined in ¶28 that the named Plaintiff seeks to represent began their H-2A employment by one or more of the Speight defendants in 2010, 2011, 2012, and 2013.

85. The first regular payday for the wages due the named Plaintiff and other H-2A workers described in ¶84 above for the first workweek in 2010, 2011, 2012, 2013, and years thereafter pursuant to the job contract that the named Plaintiff and other H-2A workers described in ¶84 above had with the Speight defendants in 2010, 2011, 2012, and 2013 and years thereafter.

86. For calendar years 2010, 2011, 2012, 2013, and thereafter, the Speight defendants failed to reimburse named Plaintiff Hernandez and the other H-2A workers described in ¶77 above an amount that was equal to or exceeded the expenditures described in ¶¶78 and 80-82, inclusive, above to the extent that those costs reduced the first workweek's wages of the named Plaintiff and those other H-2A workers below the federal minimum wage rate applicable for each of those years and contract periods. With this failure to reimburse, the Speight defendants also

breached their contract of employment with the named Plaintiff and those other H-2A workers to pay them at the AEWR rate specified in their job contract for each of those same contract periods in 2010, 2011, 2012, 2013, and thereafter.

87. In 2011, 2012, 2013, and thereafter, the Speight defendants also failed to reimburse named Plaintiff Hernandez and the H-2A workers described in ¶79 above for the expenditures described in ¶79 to the extent that those costs reduced the last workweek's wages of the named Plaintiff and those same other H-2A workers below the AEWR. With this failure to reimburse, the Speight defendants also breached their contract of employment with the named Plaintiff and those same other H-2A workers.

88. For 2010, 2011, 2012, and 2013, the Speight defendants did not prohibit Mas Labor H-2A, LLC, Inc. or any of their agents in Mexico from charging and collecting any visa processing fee and/or recruiting fee in addition to the money that was required to pay the U.S. Consulate in Monterrey, Mexico for the visa fee and any applicable visa reciprocity/interview fee.

89. In 2010, 2011, 2012, and 2013, the Speight defendants did not instruct Mas Labor H-2A, LLC, Inc. to prohibit any of the agents of the Speight defendants and/or Mas who operated in Mexico in one or more of those same years from charging and collecting any visa processing fee and/or recruiting fee in addition to the money that was required to pay the U.S. Consulate in Monterrey, Mexico for the visa fee and any applicable visa reciprocity/interview fee.

90. In 2010, 2011, 2012, and 2013, pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), the Speight defendants disclosed to named Plaintiff Hernandez and the other H-2A workers that they employed in the contract periods for each of those same years that the Speight defendants would pay them free and clear the minimum hourly wage rate required by 20 C.F.R. § 655.120 for all hours worked.

91. In 2010, 2011, 2012, and 2013, pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2), the Speight defendants disclosed to named Plaintiff Hernandez and all workers that they employed in the contract periods for each of those same years that the Speight defendants would pay them free and clear at the minimum hourly wage rate required by 29 U.S.C. § 206(a) for all hours worked.

92. For the entire contract period specified in the job contracts that defendants Speight and Beamon filed in 2010, 2011, 2012, and 2013, the Speight defendants made wage deductions for an alleged savings plan from the weekly wages that were due the named Plaintiff and each member of the collective action and classes and subclass defined in ¶¶23 and 36 above during the periods of employment alleged in those same paragraphs and ¶9(a) above.

93. For entire time period that defendants Speight and Beamon made the wage deductions that are described in ¶92 above from the weekly wages due the named plaintiff and the members of the class, subclass, and collective action defined in ¶¶23 and 36

above, the named plaintiff and those same workers did not freely and voluntarily consent to any of those wage deductions.

94. For the contract period covered by the job orders that defendants Speight and Beamon filed in 2010 and 2011, when the Speight defendants made the wage deductions that are described in ¶92 above, one or more of the Speight defendants labeled them as wage deductions for a "cash advance" made to the workers described in ¶92 above.

95. For the contract period covered by the job order that defendants Speight and Beamon filed in 2012, when the Speight defendants made the wage deductions that are described in ¶92 above, one or more of the Speight defendants labeled them as wage deductions for a "employee advance repayment" and "savings adjustment" made to the named Plaintiff and the workers described in ¶92 above.

96. In 2010, 2011, 2012, and 2013, the Speight defendants did not disclose their intent to make these wage deductions to named Plaintiff Hernandez and each member of the collective action and subclass defined in ¶¶23 and 36 above in the H-2A job order in violation of 20 C.F.R. §§ 655.104(m) and 655.104(1)(2009), 20 C.F.R. §§ 655.122(m) and 655.122(p)(1)(2010).

97. In 2010, 2011, 2012, and 2013, the Speight defendants did not obtain a wage deduction authorization of the type described in N.C.Gen.Stat. § 95-25.8(a)(2)-(3) from named Plaintiff Hernandez nor from any member of the class, subclass,

and collective actions defined in ¶¶23 and 36 above which was signed by the named Plaintiff and each such member on or before the payday(s) for the pay period(s) that the Speight defendants made the wage deduction(s) that are described in ¶92 above for each of those same years.

98. In 2010, 2011, 2012, and 2013, on a substantial number of weekly paydays in each of the time periods covered by the H-2A contracts for each of those same years for workweeks which included one or more workdays falling on or after April 8, 2010, defendants Speight and Beamon made wage deductions for an alleged "savings plan" from the wages they paid free and clear to the named Plaintiff and the members of the collective action defined in ¶23 above which reduced the net wages paid to those same workers below the minimum rate required by 29 U.S.C. § 206(a).

99. In 2011, 2012, and 2013, on a substantial number of weekly paydays in each of the time periods covered by the H-2A contracts for each of those same years for workweeks which included one or more workdays falling on or after April 8, 2011, defendants Speight and Beamon made wage deductions for an alleged "savings plan" from the wages they paid free and clear to the named Plaintiff and the members of the collective action defined in ¶23 above which reduced the net wages paid to those same workers below the minimum rate required by 29 U.S.C. § 206(a).

100. In 2010, 2011, 2012, and 2013, on a substantial number of weekly paydays in each of the time periods covered by the H-2A contracts for each of those same years for workweeks which

included one or more workdays falling on or after April 8, 2010, defendants Speight and Beamon made wage deductions for an alleged "savings plan" from the wages they paid free and clear to the named Plaintiff and the members of the subclass action defined in ¶36 above which reduced the net wages paid to those same workers below the minimum hourly rate that the Beamon defendants had disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2).

101. In 2010, 2011, 2012, and 2013, on a substantial number of weekly paydays in each of the time periods covered by the H-2A contracts for each of those same years for workweeks which included one or more workdays falling on or after April 8, 2011, defendants Speight and Beamon made wage deductions for an alleged "savings plan" from the wages they paid free and clear to the named Plaintiff and the members of the subclass action defined in ¶36 above which reduced the net wages paid to those same workers below the minimum hourly rate that the Beamon defendants had disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2).

102. In 2010, 2011, 2012, and 2013, on a substantial number of weekly paydays in each of the time periods covered by the H-2A contracts for each of those same years for workweeks which included one or more workdays falling on or after April 8, 2011, defendants Speight and Beamon made wage deductions for an alleged "savings plan" from the wages they paid free and clear to the named Plaintiff and the members of the class action defined in ¶36 above which reduced the net wages paid to those same workers

below the minimum hourly rate that the Beamon defendants had disclosed to them pursuant to N.C.Gen.Stat. §§ 95-25.13(1)-(2).

103. As a condition of any reimbursement or payment by the Speight defendants to the named Plaintiff and/or any member of the collective action, class, and/or subclass referred to in ¶92 above from the "savings plan" fund created by the wage deductions described in ¶92 above, it was and continues to be the policy and practice of the Speight defendants to require that the worker involved sign an authorization which purported to give the Speight defendants permission to make the wage deductions described in ¶95 above well after the payday(s) on which defendants Speight and Beamon actually made those wage deductions.

104. In 2010, 2011, 2012, and 2013, the Speight defendants did not provide any disclosure or notice in advance of the date on which wages were actually paid to the named Plaintiff and the members of the collective action and subclasses and subclass defined in ¶¶23 and 36 above as to the rate or amount of the wage deduction that one or more of the Speight defendants actually intended to and did make from the wages due those same employees for any particular pay period in those same years.

105. All defendants were on notice of their obligations under the FLSA and the NCWHA and acted in reckless disregard of those obligations in 2010, 2011, 2012, and 2013 as they were members of a defendant class that was previously sued in _José Manuel Garcia-Alvarez, et al. v. NCGA, et al._, Civil Action No.

CV601-56 (Wake County Superior Court Complaint filed October 28, 2004), alleging, *inter alia*, that defendants Speight and John Milton Beamon had violated the NCWHA by failing to reimburse H-2A worker plaintiffs in that case for costs incurred that were primarily for the benefit of those same two (2) defendants, and thereby reduced the earnings of the H-2A worker plaintiffs in that case below the then applicable AEWR. The Speight defendants were also members of The North Carolina Grower's Association, Inc. ("NCGA") when a federal court decided a similar FLSA action against the NCGA in *De Luna-Guerrero v. NCGA*, 338 F.Supp.2d 649 (E.D.N.C. 2004).

106. In addition, upon information and believe, all defendants were on notice of their obligations under the FLSA and the NCWHA and acted in reckless disregard of those obligations in 2010, 2011, 2012, and 2013 based upon the information and advice provided to them by MAS Labor H-2A, LLC.

XI.   FIRST CLAIM FOR RELIEF (NCWHA)

107. Paragraphs 5 through 21, 27-34, 43-89, and 105-106, inclusive, above are realleged and incorporated herein by reference by Plaintiff Hernandez and each member of the class defined in ¶28 of this complaint that named Plaintiff Hernandez seeks to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against the Speight defendants under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq*.

108. The Speight defendants violated their duty to Plaintiff Hernandez and the class defined in ¶28 to pay all wages under

N.C.Gen.Stat. § 95-25.6 when those wages were due at the AEWR or contract rate on the first and last regular paydays for the work performed by Plaintiff Hernandez and the class defined in ¶28 in each time period specified in the H-2A job orders filed by defendants Speight and Beamon in 2011, 2012, and 2013 and thereafter when the Speight defendants did not pay and will not pay all those same wages in the manner that is alleged in ¶¶86-87 above based upon the de facto wage deductions described in ¶¶78-82 and 86-87 above.

109. As a result of the actions or omissions of the Speight defendants that are described or referred to in ¶¶43-89 above of this complaint, Plaintiff Hernandez and each person who is a member of the class defined in ¶28 above of this complaint have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under N.C.Gen.Stat. §§ 95-25.6, 95-25.22(a), and 95-25.22(a1).

XII.   SECOND CLAIM FOR RELIEF (Contract AEWR wage)

110. Paragraphs 5 through 21, 27-34, and 43-89, inclusive, above are realleged and incorporated herein by reference by Plaintiff Hernandez and each member of the class defined in ¶28 of this complaint that the named Plaintiff seeks to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against the Speight defendants under the common law of employment contracts.

111. The Speight defendants breached their express, implied, and/or constructive job order contracts of 2010, 2011, 2012, and 2013 in when those same named defendants did not pay and will not

pay all wages due when those wages were and will be due under the terms of those same job order contracts to plaintiff Hernandez and the members of the contract AEWR wage class defined in ¶28 above of this complaint that those same Plaintiffs seek to represent under Rule 23(b)(3), Fed.R.Civ.P., for the first and last workweeks of the work described in ¶¶9-11, 55, and 57 above of this Complaint based upon the actions or omissions described in ¶¶78-82 and 86-87 above of this Complaint.

112. As a result of the actions or omissions of the Speight defendants that are described or referred to in ¶¶43-89 above of this complaint, Plaintiff Hernandez and each person who is a member of the contract AEWR wage class defined in ¶28 above of this complaint have suffered damages in the form of unpaid wages that may be recovered under the common law of contracts.

XIII. THIRD CLAIM FOR RELIEF (NCWHA against all defendants)

113. Paragraphs 5 through 21, and 35-70, and 90-104, inclusive, above are realleged and incorporated herein by reference by named Plaintiff Hernandez and each member of the class and subclass defined in ¶36 of this complaint that the named Plaintiff seeks to represent pursuant to Rule 23(b)(3), Fed.R.Civ.P., against the Speight defendants under the North Carolina Wage and Hour Act, N.C.Gen.Stat. §§ 95-25.1 *et seq.*

114. The Speight defendants violated their duty to named Plaintiff Hernandez and the class and subclass defined in ¶36 to pay all wages free and clear when those wages were due on each such employee's regular payday pursuant to N.C.Gen.Stat. §§ 95-

25.6 and 95-25.8 by failing to pay them wages free and clear through the use of the wage deduction "savings plan" that is described in ¶¶90-104 above.

115. As a result of the actions or omissions of the Speight defendants that are described or referred to in ¶¶35-70 and 90-104, inclusive, above of this complaint in violation of N.C.Gen.Stat. §§ 95-25.6 and 95-25.8, 13 N.C.A.C. Tit.12 §§ .0103 and .03005(g), and 29 C.F.R. § 531.35, Plaintiff Hernandez and each person who is a member of the class and subclass defined in ¶36 above of this complaint have suffered damages in the form of untimely payment of wages and liquidated damages that may be recovered under N.C.Gen.Stat. §§ 95-25.6, 95-25.8, 95-25.22(a), and 95-25.22(a1).

XIV. FOURTH CLAIM FOR RELIEF (FLSA Wage Payment Claim)

116. Paragraphs 5 through 21, 22-26, 43-70, 90-106, and 113-115, inclusive, above are realleged and incorporated herein by reference by named Plaintiff Hernandez and each member of the collective action defined in ¶¶22-23 of this complaint that the named Plaintiff seeks to represent pursuant to 29 U.S.C. § 216(b) against the Speight defendants under the FLSA.

117. The Speight defendants breached their duty to pay all wages due when those wages were and will be due at the minimum rate required by the FLSA to the named Plaintiff and the members of the collective FLSA action defined in ¶¶22-23 above of this complaint that the named Plaintiff seeks to represent under 29 U.S.C. § 216(b) for each workweek of the work described in ¶¶9-11,

55, and 57 above of this Complaint based upon certain illegal wage deductions that the defendants made pursuant to the illegal savings plan alleged in ¶¶22-26, 43-70 and 90-104 above in violation of the provisions of 29 U.S.C. 206(a), 29 C.F.R. § 531.35, and/or 20 C.F.R. §§ 655.122(m) and 655.122(p)(1).

118. As a result of the actions or omissions of the Speight defendants that are described or referred to in ¶¶5-21, 22-26, 43-70, 90-106, and 113-115, inclusive, above of this complaint, all Plaintiffs and each person who is a member of the collective FLSA action defined in ¶¶22-23 above of this complaint have suffered damages in the form of untimely payment of wages and liquidated damages that may be recovered under 29 U.S.C. § 216(b).

XV.  CLAIM FOR DECLARATORY RELIEF

119. Paragraphs 4 through 118 above are realleged and incorporated herein by reference by the Plaintiffs, the classes and subclass of persons defined in ¶¶28 and 36 above, and the members of the collective actions defined in ¶¶22-23 above that the named Plaintiff seeks to represent against the Speight defendants.

120. The parties named in this action and the classes, subclass, and members of the collective actions that the named Plaintiff seeks to represent are in dispute as to their respective rights, privileges, obligations, and liabilities under the Fair Labor Standards Act, the North Carolina Wage and Hour Act, and the common law of contracts, and require declaratory relief as to what

those respective rights, privileges, obligations, and liabilities are.

WHEREFORE Plaintiff respectfully requests that the Court:

(a)  Grant a jury trial on all issues so triable;

(b)  Pursuant to Rule 23(b)(3), Fed.R.Civ.P., certify the one or more of the named Plaintiffs as the representative of the classes and subclass alleged in ¶¶28 and 36 above with respect to both the First, Second, Third Claims for Relief based upon the factors alleged in ¶¶27-50, inclusive, above of this Complaint;

(c)  Pursuant to 29 U.S.C. § 216(b), certify all named Plaintiffs as the representatives of the collective action alleged in ¶¶22-23 above with respect to the Fourth Claim for Relief;

(d)  Enter judgment against each of the Speight defendants, jointly and severally, and in favor of each named Plaintiff Juan Manuel Hernandez-Martinez and each member of the classes and subclass defined in ¶¶28 and 36 above for compensatory damages, contract damages, liquidated damages where allowed by law, and unpaid back wages, plus pre- and post-judgment interest at the full amount allowed by law under the First, Second, and Third Claims for Relief;

(e)  Enter judgment against each of the Speight defendants, jointly and severally, and in favor of named Plaintiff Juan Manuel Hernandez-Martinez, and each member of the collective action defined in ¶¶22-23 above for an amount in liquidated damages equal to the amount of wages that the Speight defendants did not pay on the regular payday of those same workers when those wages were due

in the amount required by 29 U.S.C. §206(a) pursuant to 29 U.S.C. §§206 and 216(b) against each of the Speight defendants, jointly and severally, under the Fourth Claim for Relief for the work described in ¶¶9-11, 55 and 57 above by and for the Plaintiff and the members of the collective action alleged in ¶¶22-23 above;

(f) Enter judgment against each of the Speight defendants, jointly and severally, and in favor of all of the named Plaintiff and each member of the class and subclass and collective actions defined in ¶¶22-23, 28, and 36 above for costs and a reasonable attorney's fee pursuant to 29 U.S.C. § 216(b) and N.C.Gen.Stat. § 95-25.22(d);

(g) Grant the named Plaintiffs and the members of the collective action and classes and subclass that the named Plaintiff seeks to represent declaratory relief that the Speight defendants have violated the rights of the named Plaintiff and those other employees under the FLSA, the AWPA, the NCWHA, and the common law of contracts;

(h) Award such other relief as may be just and proper in this action.

This the 4th day of September 2013.


LAW OFFICE OF ROBERT J. WILLIS, P.A.


BY:     /s/ Robert J. Willis
        Robert J. Willis
        Attorney at Law
        NC Bar #10730
        (mailing address)
        P.O. Box 1269
        Raleigh, NC  27602
        tel: (919) 821-9031
        fax: (919)821-1763
        rwillis@rjwillis-law.com

        (street address)
        5. W. Hargett Street
        Suite 404
        Raleigh, NC  27601
        Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 4, 2013 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: William A. Oden, III.

Dated: September 4, 2013.                Respectfully submitted,

<u>/s/ Robert J. Willis</u>
Robert J. Willis
Attorney for Plaintiffs
P.O. Box 1269
Raleigh, NC  27602
Telephone: (919)821-9031
Fax: (919)821-1763
E-mail: rwillis@rjwillis-law.com